UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HERMAN P. JOHNSON, | ) |
| Petitioner, | ) |
| v. | ) 1:13-cv-1242-SEB-TAB |
| DUSHAN ZATECKY, | ) |
| Respondent. | ) |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

A jury convicted Herman Johnson in 2009 of Class A child molesting and of Class C child molesting. The same jury returned a not guilty verdict as to a third charge, criminal confinement. The victim of his crimes is his niece, who at all relevant times was a minor. Johnson is now serving the executed portion of the 45-year sentence imposed for these offenses. He now seeks a writ of habeas corpus, contending that his convictions are tainted by constitutional error.

Having considered the pleadings and the expanded record, and being duly advised, the Court finds for the reasons explained in this Entry that Johnson's habeas petition must be denied. The Court also finds that no certificate of appealability should issue.

**The Petition for Writ of Habeas Corpus**

**I. Background**

Johnson's convictions were affirmed on appeal in *Johnson v. State*, 925 N.E.2d 509 (Ind. Ct.App. Apr. 23, 2010)(*Johnson I*), wherein his challenges to the sufficiency of the evidence and argument based on the trial court's rejection of his challenge based on *Batson v. Kentucky,* 476 U.S. 79, 89 (1986). The trial court then denied Johnson's petition for post-conviction relief. The denial of post-conviction relief was affirmed on appeal in *Johnson v. State*, 985 N.E.2d 1149 (Ind.Ct.App. Apr. 16, 2013)(*Johnson II*).

An *Amended Information* was filed in Johnson's case on June 22, 2009. The language of the charges on which Johnson was found guilty was accurately described in *Johnson II*:

> With respect to child molesting as a class A felony, Count I alleged that Johnson "being at least twenty-one (21) years of age, did perform or submit to deviate sexual conduct, an act involving a sex organ, that is: vagina of [E.B.] and the mouth of [Johnson], with [E.B.], a child who was then under the age of fourteen (14) years, that is: ten (10) years of age." Appellant's Appendix at 37. Ind.Code § 35–42–4–3 provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if . . . it is committed by a person at least twenty-one (21) years of age." With respect to child molesting as a class C felony, Count II alleged that Johnson "did perform or submit to any fondling or touching with [E.B.], a child who was then under the age of fourteen (14) years, that is: ten (10) years of age, with intent to arouse or satisfy the sexual desires of [E.B.] and/or the sexual desires of [Johnson]." *Id.* at 37–38. Ind.Code § 35–42–4–3 provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony."

*Johnson II,* at *5 n.4.

It is noted in *Jones v. Butler,* 2015 WL 430436, at *1 (7th Cir. Feb. 3, 2015), that "[i]n § 2254 proceedings, federal courts are foreclosed from fact-finding. We therefore defer to the findings of the [state] court, which have not been challenged and are presumed to be correct unless rebutted by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1) and *Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012)).

> Johnson was forty-five years old and lived in Indianapolis. One day he went to the movies with his ten-year-old niece E.B. and his girlfriend Wanda. Afterward the three returned to Johnson's house. E.B. and Johnson began playing chess. Wanda left after ten or fifteen minutes. E.B. and Johnson then decided to play a card game. E.B. went to the back room to look for a deck of cards, and Johnson followed her.
> While they were in the back room, Johnson lifted E.B. from behind, pulled up her shirt and bra, and touched her breast. Wanda soon returned. Johnson instructed E.B. not to tell anyone that he had picked her up. E.B. came to the front of the house to see Wanda. E.B. did not tell her what had happened. Wanda left again five minutes later.

E.B. continued to look for cards. She could not find any and returned to the back room. Johnson picked E.B. up again and touched her vagina over her clothing. E.B. then went to another room to resume her search. She again found no cards and returned to the back room. Johnson came in and placed E.B. on the bed. Johnson pulled down her pants and underwear, inserted his finger into her vagina, and moved his finger "[i]n and out." Tr. p. 26. E.B. told Johnson that he was hurting her, but Johnson said he did not care. E.B. started kicking. Johnson pinned her down and began licking the inside of her vagina.

Soon E.B.'s mom called, and E.B. spoke to her briefly on the phone. At some point E.B. and Johnson left and went to Safeway. They also stopped at a laundromat so E.B. could go to the bathroom. Johnson gave E.B. his cell phone before she went in. E.B. called her mom while in the restroom and told her what Johnson had done. E.B. and Johnson then returned to the house, and E.B.'s mother was there when they arrived. E.B. left with her mother. They picked up E.B.'s father, and E.B. explained to her parents what had happened. Authorities were ultimately notified.

*Johnson I,* at *1.

In *Johnson II,* Johnson argued that he had been denied the effective assistance of counsel at trial, presented various free-standing claims, and renewed the claims which had been rejected in *Johnson I*.

Johnson's petition for writ of habeas corpus presents the following claims:

(1) he was denied the effective assistance of counsel at trial;

(2) there was insufficient evidence to support the verdicts;

(3) he was denied his right to a fast and speedy trial;

(4) the prosecutor used peremptory challenges in a racially discriminatory manner;

(5) there was sentencing error;

(6) there is newly discovered evidence;

(7) the State committed error in responding to the petition for post-conviction relief;

(8) he was convicted of an uncharged offense;

(9) witness statements and testimony were inconsistent; and

(10) there was no intent alleged in the charging instrument.

## II. Applicable Standards

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996).

The scope of the Great Writ is limited because a viable habeas claim pursuant to § 2254(a) necessarily precludes a claim which is not based on alleged noncompliance with federal law. *See Wilson v. Corcoran,* 131 S. Ct. 13, 16 (2010)("But it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."). As the Supreme Court has clearly stated, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke,* 131 S. Ct. 859, 861 (2011) (citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)). "To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim >presents no federal issue at all.≠@*Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)).

Johnson filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

Federal habeas relief is barred for any claim adjudicated on the merits in state court "unless one of the exceptions listed in 28 U.S.C. § 2254(d) obtains." *Premo v. Moore,* 131 S. Ct. 733, 739 (2011). Under the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362 (2000); *Morgan v. Krenke,* 232 F.3d 562 (7th Cir. 2000). Thus, "under AEDPA, federal

courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

In addition to the foregoing substantive standard, claims which Johnson presents here but which were not properly preserved in the Indiana state courts have been procedurally defaulted. *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992)(procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court"), *cert. denied,* 508 U.S. 962 (1993). A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene,* 527 U.S. 263, 282 n.24 (1999). To show prejudice, a petitioner must show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."

*Id.* 477 U.S. at 496. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998).

The methodology for the Court's analysis is this: The first step under § 2254(d)(1) is "to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing *Williams v. Taylor,* 529 U.S. at 412; *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009)). In proceeding with the analysis, a federal habeas "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011). If a state court's decision "was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011) (per curiam).

### III. Discussion

#### A. Ineffective Assistance of Counsel

Johnson claims that he was denied the effective assistance of counsel at trial.

The Sixth Amendment guarantees a criminal accused the right to assistance of counsel, and "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). This means representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook,* 558 U.S. 4, 16 (2009). This guarantee exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984).

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

> Under *Strickland,* [a defendant] must prove two elements: (1) that his trial counsel's performance fell below "an objective standard of reasonableness," *id.* at 688; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. For the first element, this court's review of the attorney's performance is "highly deferential" and "reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. For the second element, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Daniels v. Knight,* 476 F.3d 426, 433-34 (7th Cir. 2007) (parallel citations omitted).

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a case such as Johnson presents, however, the AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Tracking the argument made in *Johnson II*, the specifications he offers to support his claim of ineffective assistance of counsel are that his attorney (1) failed to investigate the lack of medical evidence to support the allegations and failed to depose certain witnesses, (2) failed to file a motion to dismiss based upon his speedy trial rights, (3) failed to advise or explain the credit time classifications, (4) failed to file a motion to dismiss the charging information, and (5) failed to object to E.B.'s testimony regarding digital penetration. *Id.* at *3.

In applying AEDPA's "difficult to meet . . . and highly deferential standard," we must give the Indiana Court of Appeals' decisions "the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted). The Indiana Court of Appeals

recognized that the controlling standard set forth in *Strickland*. *Johnson II,* at *3. The Indiana Court of Appeals examined the circumstances associated with each of Johnson's specifications of ineffective assistance of counsel and consistently found that Johnson's ineffective assistance of counsel arguments failed to identify that he had been prejudiced in the manner required by *Strickland*. These findings were that: (1) Johnson had not shown a reasonable probability that information which would have been learned by taking depositions or from further investigation that the result of the proceeding would have been different; (2) the record refuted the claim that there had been a speedy trial violation under Indiana Criminal Rule 4(B); (3) Johnson failed to show how the asserted deficient information given to him regarding the manner in which a sentence would be served could or would have affected the outcome of his case; (4) the language of the charging document tracked the language of the applicable statute and was sufficient; (5) Johnson failed to show that his attorney's failure to object to certain evidence could not have been a reasonable trial strategy and that he had been prejudiced by the admission of that evidence. *Id.* at **4-6. In doing so, the Indiana Court of Appeals did not transgress the deferential AEDPA standard which has already been noted. *Atkins v. Zenk*, 667 F.3d 939, 943-44 (7th Cir. 2012) ("Plainly stated, these are demanding standards. This Court has recognized that federal courts should deny a habeas corpus petition so long as the state court took the constitutional standard 'seriously and produce[d] an answer within the range of defensible positions.'")(quoting *Mendiola v. Schomig,* 224 F.3d 589, 591–92 (7th Cir. 2000)). The Indiana Court of Appeals= *Strickland* analysis was not "an unreasonable application of clearly established Federal law." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam). Accordingly, this decision is entitled to AEDPA deference under ▪ 2254(d)(1), *id.,* and Johnson is therefore not entitled to habeas corpus relief based on his claim that he was denied the effective assistance of counsel at trial.

### B. Insufficient Evidence to Support the Verdict

Johnson argued in *Johnson I* that the evidence was insufficient. The Indiana Court of Appeals rejected that argument. Johnson did not include this argument in his petition to transfer and in consequence has committed procedural default with respect to this claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)("'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."). Without a showing of cause and prejudice or that the failure to reach the merits of these claims would result in a miscarriage of justice, the court is unable to reach the merits of these claims.

Default aside, the Indiana Court of Appeals reviewed the evidence and reasonably applied a standard comparable to that established in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). That is, construing the evidence in the light most favorable to the State, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *McFowler v. Jaimet,* 349 F.3d 436, 446 (7th Cir. 2003) (citing *Jackson*).

The Indiana Court of Appeals described the evidence as sufficient based on the following:

> We find sufficient evidence to sustain Johnson's two child molesting convictions. With regard to the Class A felony, the evidence most favorable to the verdict reveals that Johnson licked the inside of E.B.'s vagina. And with respect to the Class C felony, the evidence reveals that Johnson inserted his finger into E.B.'s vagina and moved it "[i]n and out." This is sufficient evidence of probative value from which the jury could conclude that Johnson touched E.B. with the intent to arouse his or her sexual desires.

*Johnson I,* at *6. This was not an unreasonable application of the *Jackson* standard. *Monroe v. Davis,* 712 F.3d 1106, 1120 (7th Cir. 2013).

### C. Fast and Speedy Trial

Johnson's claim concerning a fast and speedy trial is based on the asserted violation of Indiana state law. This claim is not cognizable under § 2254(a). *Del Vecchio v. Illinois Dep't. of Corr.,* 31 F.3d 1363, 1370 (7th Cir. 1994) (habeas corpus jurisdiction is limited to evaluating alleged violations of federal statutory or constitutional law). Even were the situation otherwise, Johnson's trial was conducted less than 60 days after his motion for a speedy trial was filed.

### D. *Batson* Claim

Johnson argues that the State used peremptory challenges in a racially discriminatory manner.

The controlling Supreme Court decision on this subject is its decision in *Batson v. Kentucky,* 476 U.S. 79 (1986). *Batson* established a three-step inquiry for determining the constitutionality of challenged peremptory strikes:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike."

*Rice v. Collins,* 546 U.S. 333, 338 (2006) (internal citations omitted).

A *Batson* claim has been adjudicated on the merits when all three steps of the analysis have been reached. *Bond v. Beard,* 539 F.3d 256, 264 (3d Cir. 2008) ("Failure to make a step-three finding . . . would render the state court's decision either 'contrary to' or an 'unreasonable application' of *Batson* . . . and we would not apply AEDPA deference.").

The Indiana Court of Appeals recognized *Batson* as the controlling Supreme Court decision. *Johnson I,* at *3. It then acknowledged that "the first two *Batson* requirements were satisfied in this case. Johnson made a *prima facie* showing of racial discrimination when the State struck the only two prospective African–American jurors on the panel." *Id.* at *4. As to the third step, "the State offered two facially race-neutral explanations for its peremptory challenges: Mr. Swan said he would not be able to convict on the testimony of a single witness, and Ms. Gillenwaters preferred seeing DNA evidence which the State would be unable to provide." *Id.* The trial court found this explanation legitimate and the Indiana Court of Appeals did likewise. The result in the Indiana state courts was that Johnson had failed to carry his burden of proving purposeful discrimination. There was nothing objectively unreasonable in their doing so. The State's peremptory challenges were not exercised in a racially discriminatory manner.

### E. Sentencing Error

Johnson claims there was error at sentencing. This was one of the freestanding claims raised in *Johnson II.* Johnson committed procedural default in not presenting it in his direct appeal. *See Lane v. Richards,* 957 F.2d 363, 366 (7th Cir.), *cert. denied,* 113 S. Ct. 127 (1992). The rule is this:

> A post-conviction relief proceeding is not a substitute for trial and appeal, but is a process for raising issues that were unknown or not available at trial. *Davidson v. State,* 763 N.E.2d 441, 443 (Ind. 2002). If an issue was available on direct appeal but not litigated, it is deemed waived. *Madden v. State,* 656 N.E.2d 524, 526 (Ind.Ct.App. 1995).

*Conner v. Anderson*, 259 F.Supp.2d 741, 750 (S.D.Ind. 2003)(quoting *Smith v. State,* 774 N.E.2d 1021, 1022 (Ind.Ct.App. 2002)).

Even if properly preserved, moreover, Johnson could not obtain relief based on this claim. The issue of sentencing within the parameters of state law is ordinarily outside the realm of federal habeas review, *Koo v. McBride*, 124 F.3d 869, 875 (7th Cir. 1997), and this case is no exception.

### F. Newly Discovered Evidence

Johnson seeks habeas relief based on this claim of newly discovered evidence. However, "'[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner,* 379 F.3d 113, 122 (3d Cir. 2004) (citing *Herrera v. Collins,* 506 U.S. 390, 400 (1993)), *cert. denied,* 543 U.S. 1067 (2005). "[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Herrera,* 506 U.S. at 400

### G. Error in the Post-Conviction Proceeding

Johnson claims that the State committed error in responding to the petition for post-conviction relief. Habeas review concerns only the proceedings that have resulted in the petitioner's conviction. Thus, a claim of this nature does not taint a conviction and alleged error in post-conviction proceedings does not support relief under 28 U.S.C. § 2254(a). *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) ("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981).

### H. Convicted of an Uncharged Offense

Johnson claims that he was convicted of an uncharged offense. This claim has not been properly preserved in the Indiana state courts for consideration here. Johnson has committed procedural default as to this claim. In any event, this claim is entirely spurious. The text of the charging instrument has already been reviewed, there was no challenge to the instructions or the verdict forms, and the jury was polled upon the verdict being announced in open court.

### I. Inconsistent Witness Statements and Testimony

Johnson explains in this claim that there were inconsistent witness statements and testimony. This claim was not separately and properly presented to the Indiana state courts. If properly preserved, moreover, it could be understood in either of two ways. First, it could be understood as a challenge to the sufficiency of the evidence; the sufficiency of the evidence in this case, however, was itself procedurally defaulted. Second, it could be a challenge to the manner in which the evidence was weighed and the credibility of witnesses determined. This would not be permitted, however, because such a challenge would be premised on an assumption antagonistic to the rule in *Jackson.* The Supreme Court has noted that the federal habeas statute "gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983); *see also Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993). Thus, "[a]ssessment of the credibility of the witnesses is beyond the scope of federal habeas corpus review of a claim of insufficient evidence." *Bowen v. Haney,* 622 F.Supp.2d 516, 546 (W.D.Ky. 2008) (citing *Matthews v. Abramajtys,* 319 F.3d 780, 788–89 (6th Cir. 2003) (internal citation omitted)).

## J. No Intent Alleged in the Charging Instrument

Johnson was charged by information. He claims that the charging document was defective because it did not allege that he acted with the requisite *mens rea.*

This claim was not included in *Johnson I.* In *Johnson II,* the Indiana Court of Appeals found that it had been waived. This finding is an adequate and independent state procedural ground. This means that Johnson has committed procedural default as to this claim.

He blames his attorney in *Johnson I.* Although it is true that ineffective assistance of counsel rising to the level of a constitutional violation may, in some circumstances, constitute cause for a procedural default, *see Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wrinkles v. Buss,* 537 F.3d 804, 812 (7th Cir. 2008), it does not do so in this case because as just noted it has not been independently and fully presented to the Indiana state courts. *Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995); *Lostutter v. Peters,* 50 F.3d 392, 396 (7th Cir. 1995).

This procedural default is therefore unexcused and precludes examination of the merits of this claim.

Apart from this, (1) the sufficiency of a state charging information is generally not a proper subject for habeas corpus review, *Knewel v. Egan,* 268 U.S. 442, 446 (1925); *Lee v. Gammon,* 222 F.3d 441, 442 (8th Cir. 2000), (2) even if the Court could find otherwise in this case, the Indiana Supreme Court held in *D'Paffo v. State,* 778 N.E.2d 798 (Ind. 2002), that the State is not required to prove intent to arouse or satisfy sexual desires in order to obtain a conviction of child molesting by committing deviate sexual conduct, and (3) the *Amended Information* indisputably provided Johnson with "fair notice of the charges against him [sufficient] to permit adequate preparation of his defense." *Williams v. Haviland,* 467 F.3d 527, 535 (6th Cir. 2006).

## IV. Conclusion

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 112 S. Ct. 1715, 1722 (1992) (O'Connor, J., dissenting) (internal citations omitted). One of these is the doctrine of procedural default. That is the barrier Johnson faces here as to certain of his claims, and he has failed to overcome that barrier. As to the claims which were properly preserved in the Indiana state courts, they do not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In every instance where the Indiana state courts issued a decision on the merits of claims which have resurfaced in this action, the Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Johnson's habeas petition must therefore be denied.

Judgment consistent with this Entry shall now issue.

## Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254* proceedings, and 28 U.S.C. § 2253(c), the court finds that Johnson has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appealability.

IT IS SO ORDERED.

Date: _____2/6/2015_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Herman P. Johnson
No. 860799
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Electronically Registered Counsel